UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACY INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Master File No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br><br>State of Texas ex rel. Ven-A-Care of Florida Keys, Inc. v. Roxane Laboratories, Inc., et al., 1:04-cv-10886- PBS | Judge Patti B. Saris |

**THE STATE OF TEXAS AND RELATOR'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO REMAND**

**<u>INTRODUCTION</u>**

The State of Texas and Relator, Ven-A-Care of the Florida Keys, respectfully submit this Memorandum of Law in support of their Motion to Remand Action to Texas State District Court.

In July 2003, this lawsuit was filed by the State of Texas and Ven-A-Care of the Florida Keys, in the 201st District Court of Travis County Texas.  Plaintiffs seek damages, penalties, and attorney's fees from Defendants Roxane Laboratories, Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Ben Venue Laboratories, Inc., and Boehringer Ingelheim Corporation for violations of the Texas Medicaid Fraud Prevention Act and for common law fraud.  Defendants are interrelated Boehringer Ingelheim corporate entities.

Defendants removed the case to the United States District Court for the Western District of Texas, Austin Division in September of 2003, alleging a federal question under 28 U.S.C.A § 1331 (2002). In December 2003, it was transferred to this Court by the Judicial Panel on Multidistrict Litigation, pursuant to its finding that this case involves questions of fact which are common to other actions previously transferred to this Court.

Plaintiffs move to remand this action to the 201st District Court of Travis County, Texas because there is no federal question presented by this lawsuit to support federal jurisdiction. This brief is offered in support of Plaintiffs' Motion to Remand.

## STATEMENT OF THE CASE

The Texas Medicaid Program reimburses eligible providers, such as pharmacies, for dispensing approved pharmaceuticals to Texas Medicaid recipients. This program is administered by the Texas Vendor Drug Program of the Texas Health and Human Services Commission. Providers can only be reimbursed by the Texas Vendor Drug Program for dispensing pharmaceutical products that are listed on the Texas Drug Code Index. *See* 1 TEX. ADMIN. CODE § 354.1831 (West 2003) (formerly enacted as 25 TEX. ADMIN. CODE § 35.201). Before a drug can be listed on the Texas Drug Code Index, the drug's manufacturer must apply to the Texas Vendor Drug Program. The application process requires the manufacturer to report, for each drug it seeks to have listed, the suggested wholesale price to pharmacies, the price at which the drug is sold to wholesalers and/or distributors, the direct price to pharmacies, the price to chain warehouses and the price at which the drug is sold to any other special purchasing groups. The manufacturer is required to

certify to the Texas Vendor Drug Program that the information it has provided is correct and that it will provide correct information regarding subsequent price changes within 15 days of the occurrence of such change. (State of Texas' First Am. Pet. ¶ 6.1.) The Texas Medicaid Program bases its calculation of reimbursement amounts to be paid to providers on the prices the manufacturers report in the application process and in subsequent price updates. (State of Texas' First Am. Pet. ¶ 6.2.)

Plaintiffs allege that Defendants intentionally made false or misleading representations of their drug prices to, and concealed their true drug prices from, the Texas Medicaid Program, knowing that by doing so they were causing the State to make reimbursement payments to providers greatly in excess of what would have been paid had Defendants truthfully reported their prices. These excessive reimbursements induced Medicaid providers to purchase Defendants' drugs over those of drug manufacturers that truthfully report their prices, resulting in Defendants gaining higher sales and greater market share. Through this lawsuit, Plaintiffs seek to hold Defendants accountable under the Texas Medicaid Fraud Prevention Act and the principles of Texas common law for defrauding the Texas Medicaid Program. Plaintiffs have not brought any claim based on a violation of any federal law or regulation. Federal law is nothing more than incidental to the thrust of the claims asserted.

## ARGUMENT AND AUTHORITIES

Federal jurisdiction is lacking and remand is appropriate since no federal issue is presented by the Plaintiffs' petition. Defendants, in seeking removal to federal court, have the burden of proving the existence of federal jurisdiction. *See, e.g.*, *BIW Deceived v. Local S6*, 132 F.3d 824, 831 (1st Cir.1997). Removal statutes should be strictly construed, and any doubts should be resolved

against removal. *See, e.g., Therrien v. Hamilton,* 881 F. Supp. 76, 78 (D. Mass. 1995).

Defendants' Notice of Removal presents three theories as to why removal to federal court is appropriate: (1) The claims presented require federal interpretation of AWP; (2) Texas' price reporting requirements attempt to modify federal rebate agreements; and (3) ERISA preempts the Plaintiffs' case. None of these theories identify a valid federal question arising from Plaintiffs' claims; therefore, Defendants fail to meet their burden to demonstrate the existence of federal jurisdiction and the case must be remanded to state court for further action.

### I.    PLAINTIFFS' CLAIMS DO NOT REQUIRE FEDERAL INTERPRETATION OF AWP

In their Notice of Removal, Defendants initially attempt to identify a federal question by constructing the following precarious argument: (1) Texas alleges Defendants report false pricing information to price reporting services, such as First Data Bank, Medi-Span and Red Book; (2) since Plaintiffs' petition does not specify what pricing information Defendants falsely reported to the price reporting services, ***it must be presumed*** that Texas is alleging the Defendants falsely reported Average Wholesale Price (AWP) information; (3) Medicare, a purely federal program, relies on AWP to calculate reimbursement rates, therefore this case turns on how federal statutory and common law interprets AWP; and (4) by this suit, Plaintiffs are seeking to dictate how AWP is calculated and reported to price publishing services. Defendants have mischaracterized Plaintiffs' allegations.

Defendants are attempting to transform the cause of action alleged, and the facts and issues presented, into a different cause of action with a different set of facts and issues that might arguably present a federal question. Plaintiffs' case contains no Medicare claims, nor any claim for a violation of the "best price" requirement in a Medicaid-rebate agreement. Unlike cases containing those two

4

types of allegations, in which this Court has found the existence of a federal question, this case does not allege any violation of federal law, nor does it turn on the interpretation of a contract with the federal government. *See, e.g., Montana v. Abbot Labs*, 266 F.Supp.2d 250, 259 (D. Mass. 2003).

Medicare provider reimbursements are based on AWP prices the federal government obtains, not directly from the drug manufacturers, but from price reporting services. In contrast, the Texas Medicaid Program uses the price information reported directly by the manufacturers to estimate the provider's acquisition cost (EAC) and providers are reimbursed based on the EAC or the usual and customary price charged to the general public, whichever is less. 1 TEX. ADMIN. CODE §355.8541(1) (West 2001). The Texas Medicaid Program's reimbursement system is substantially different from that of Medicare and relies upon direct responses to pricing information questions requiring certified answers from drug manufacturers, such as the Defendants in this case.

Defendants' allege that since Plaintiffs' petition does not specify what price information Defendants misrepresented, it must be assumed or presumed that the misrepresented price information includes AWP. Defendants then argue that this assumption or presumption presents a sufficiently substantial federal question to confer federal jurisdiction. Plaintiffs respectfully disagree. Contrary to Defendants' allegations, Plaintiffs' case does not turn on how federal statutory and common law interprets AWP and Plaintiffs are not seeking to dictate how AWP is calculated and reported to price publishing services. Even if Plaintiffs' case turned on the meaning of AWP, that issue would not be substantial enough to confer federal-question jurisdiction. As this Court has previously noted, absent a private right of action under the Medicare statute, such a federal issue, if any, is not substantial enough to create federal jurisdiction. *Abbot,* 266 F. Supp. 2d at 257 (citing *Merrell Dow Pharm. Inc v. Thompson*, 478 U.S. at 804, 814, 106 S.Ct. 3229 (1986)).

## II.  DEFENSIVE ARGUMENT THAT TEXAS PRICE REPORTING REQUIREMENTS ARE A MODIFICATION OF THE FEDERAL MEDICAID REBATE SYSTEM RULES AND AGREEMENTS IS NOT ADEQUATE TO CONFER FEDERAL JURISDICTION

In Defendants' second attempt to demonstrate a federal question, they argue that by requiring drug manufacturers to report their prices in the process of applying to have their drugs listed on the Texas Drug Code Index, Texas is attempting to modify Medicaid rebate agreements between drug manufacturers and the federal government.  They contend that since the federal Medicaid rebate agreements do not require disclosure of pricing information by drug manufacturers, the Texas Medicaid Program is attempting to modify the rebate agreements without authority, thereby creating a duty to report prices where none exists.  Defendants raise this issue defensively in response to Plaintiffs' cause of action in common law for fraud.

A defense that raises a federal question is inadequate to confer federal jurisdiction.  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. at 808.  The Defendants' duty to truthfully report their drug prices to the Texas Medicaid Program arises from Texas Administrative Code §§ 351.1831 (Covered Drugs) and 354.1921 (Addition of Drugs to the Texas Drug Code Index), together with the certification requirement of the Texas Drug Code Index application.  In order to prove the "duty" element of their common law fraud claim, Plaintiffs need only show a duty arising under Texas law to truthfully report prices.  It is only in the analysis of the Defendants' argument (that the Texas reporting requirement impermissibly modifies the Medicaid rebate agreements) that one must look to the federal law that governs the rebate agreements.  Only Defendants' affirmative defense brings federal law into question, and a case may not be removed to federal court on the basis of a federal defense.  *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1988).

**III.     PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY ERISA**

Finally, Defendants assert that the Employee Retirement Income Security Act ("ERISA") preempts the State's claims. 29 U.S.C. §1001 et seq. (2002)  This is incorrect. There is no relationship between the State's pursuit of these Defendants for fraudulent and misleading pharmaceutical price reports and plans governed by ERISA.[1] In order for ERISA to preempt a state law claim, the claim must "relate to" an employee benefit plan. 29 U.S.C. §1144(a)(2002). Preemption is not automatic merely because a party alleges an ERISA plan may be affected by a state law. As the United States Supreme Court held, "Preemption does not occur. . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995) (internal citations omitted).

The Texas Medicaid Fraud Prevention Act does not address or even reference ERISA or employee benefit plans. *See* TEX. HUM. RES. CODE ANN. §36.001 et seq. (Vernon 2001). Nor does this lawsuit enforcing the Act depend on, or necessarily have any effect on, plans governed by ERISA. The question of whether the Defendants provided false information to the Texas Medicaid program bears no relation to Defendants' claim that employee benefit plans may use a similar pricing term. The resolution of this lawsuit will not be binding on, nor necessarily have any effect on, any employee benefit plan. Instead, the results of this lawsuit will be to reimburse the Medicaid system for the monies fraudulently obtained from it and to penalize the Defendants for their wrongful and illegal conduct.

---

[1]"AWP" is not mentioned or defined in the language of the ERISA statutes. Thus, it appears that Defendants' claim is that some portion of the countless separate benefit plans governed by ERISA use the acronym "AWP".

## **CONCLUSION**

Defendants fail to meet their burden to show that this lawsuit turns on a federal question. There are no federal issues or claims on which Defendants may properly base their Notice of Removal. For the foregoing reasons, Plaintiffs request the Court to remand this case to state court.


Dated: May 27, 2004                     Respectfully submitted,

                                        GREG ABBOTT
                                        Attorney General of Texas

                                        BARRY R. McBEE
                                        First Assistant Attorney General

                                        EDWARD D. BURBACH
                                        Deputy Attorney General for Litigation

                                        MARK TOBEY
                                        Chief, Antitrust & Civil Medicaid Fraud Division

                                        PATRICK J. O'CONNELL
                                        Section Chief, Civil Medicaid Fraud Section


                                        /s/ Patrick J. O'Connell
                                        PATRICK J. O'CONNELL
                                        Assistant Attorney General
                                        Office of the Attorney General
                                        Antitrust & Civil Medicaid Fraud Division
                                        State Bar No. 15179900
                                        P.O. Box 12548
                                        Austin, Texas 78711-2548
                                        (512) 475-4193 [PHONE]
                                        (512) 499-0712 [FAX]

JOSEPH V. CRAWFORD
Wright & Greenhill, P.C.
State Bar No. 05030600
221 West 6th Street, Suite 1800
Austin, Texas 78701-3495
(512) 476-4600 [PHONE]
(512) 476-5382 [FAX]

ATTORNEYS FOR THE STATE OF TEXAS


/s/ *James J. Breen*
JAMES J. BREEN
Florida Bar No. 297178
ALISON W. SIMON
Florida Bar No. 0109568
The Breen Law Firm, P.A.
P.O. Box 297470
Pembroke Pines, Florida 33029-7470
(954) 499-1171 [PHONE]
(954)-499-1173 [FAX]


/s/ *Jonathan Shapiro*
JONATHAN SHAPIRO
BBO No. 454220
STERN, SHAPIRO, WEISSBERG & GARIN
90 Canal Street, Suite 500
Boston, MA 02114-2022
(617) 742-5800 [PHONE]
(617) 742-5858 [FAX]

JOHN E. CLARK
State Bar No.04287000
Goode Casseb Jones
Riklin Choate & Watson
2122 North Main Avenue
P.O. Box 120480
San Antonio, Texas 78212-9680
(210) 733-6030 [PHONE]
(210) 733-0330 [FAX]

SHERRIE R. SAVETT
Pennsylvania Bar No. 17646
SUSAN SCHNEIDER THOMAS
Pennsylvania Bar No. 32799
JEANNE A. MARKEY
Pennsylvania Bar No. 40175
JOY P. CLAIRMONT
Pennsylvania Bar No. 82775

GARY AZORSKY
Pennsylvania Bar No. 38924
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000 [PHONE]
(215) 875-4636 [FAX]

ATTORNEYS FOR RELATOR,
VEN-A-CARE OF THE FLORIDA KEYS, INC.

**CERTIFICATE OF SERVICE**

     I, Jonathan Shapiro, hereby certify that a true and accurate copy of the foregoing document was served upon all counsel of record via Verilaw on May 27, 2004.

                                                /s/ *Jonathan Shapiro*
                                                Jonathan Shapiro